UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


OASIS HEALTH AND REHAB
OF YAZOO CITY, LLC.                                    PLAINTIFF


VS.                          CIVIL ACTION NO. 3:14CV294TSL-JMR


MARVIN SMITH, INDIVIDUALLY AND AS
PERSONAL REPRESENTATIVE OF THE HEIRS
AND WRONGFUL DEATH BENEFICIARIES OF
MINERVA GARRETT, DECEASED                              DEFENDANT


CORRECTED MEMORANDUM OPINION AND ORDER

From January 2010 until her death in September 2012, Minerva
Garrett was a resident at a nursing home facility owned and
operated by Oasis Health & Rehab of Yazoo City, LLC (Oasis).  On
August 27, 2013, counsel for defendant Marvin Smith (Ms. Garrett's
grandson) sent Oasis a notice of claim letter, advising of his
intent to sue based on the following allegations:

> [T]he nursing staff at Oasis Health and Rehab of Yazoo,
> LLC negligently allowed Ms. Garrett to fall resulting in
> a fracture to her left hip causing her the need for
> medical treatment and causing her to suffer significant
> mental and physical pain and suffering. Moreover,
> following this incident, Ms. Garrett suffered several
> decubitus ulcers which were insufficiently treated and
> were allowed to progress to major wounds causing
> additional pain and suffering.  Eventually, Ms. Garrett
> was taken to Central Mississippi Medical Center where
> upon admission she was found to be severely malnourished
> and suffering from several infected stage IV decubitus
> ulcers and sepsis.  These injuries sustained by Ms.
> Garrett caused her to suffer a change in condition that
> greatly decreased her overall enjoyment of life and
> significantly compromised her health and wellbeing and
> ultimately proximately contributed to her death.

In response, Oasis filed the present action pursuant to § 4 of the Federal Arbitration Act, 9 U.S.C. § 4, contending that Smith's claims are governed by a certain alternative dispute resolution (arbitration) agreement entered between Oasis and defendant Smith, Ms. Garrett and Earnest Garrett (wrongful death beneficiary of Minerva Garrett).  Upon being served with process, Smith filed a motion to dismiss or, alternatively, for summary judgment, contending that the subject arbitration agreement is unenforceable because the proposed forum under the agreement is unavailable and because the agreement is substantively unconscionable.  Oasis responded to Smith's motion and filed a cross-motion for summary judgment for enforcement of the agreement.  Notwithstanding his securing an extension of time until July 17, 2014 to respond to Oasis's motion and to file a rebuttal in support of his own motion, Smith has not responded to Oasis's motion or filed a rebuttal.

"The 'principal purpose' of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms .'" AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1748, 179 L. Ed. 2d 742 (2011) (quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478, 109 S. Ct. 1248, 1255 (1989)).  Section 2 of the FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable,

and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. Section 4 requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement.

A district court adjudicating a motion to compel arbitration must engage in a two-step process.  Hadnot v. Bay, Ltd., 344 F.3d 474, 476 (5th Cir. 2003).  "The court must first determine whether the parties agreed to arbitrate the dispute.  This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.  The court then must determine if any legal constraints foreclose arbitration of those claims."  Brown v. Pacific Life Ins. Co., 462 F.3d 384, 397 (5th Cir. 2006) (internal citations omitted).  "The FAA expresses a strong national policy in favoring arbitration of disputes, and all doubts concerning arbitrability of claims should be resolved in favor of arbitration."  Primerica Life Ins. Co. v. Brown, 304 F.3d 469, 471 (5th Cir. 2002).  "The party resisting arbitration has the burden of demonstrating why arbitration is not appropriate."  Kisner v. Bud's Mobile Homes, 512 F. Supp. 2d 549, 556–557 (S.D. Miss. 2007) (citing Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 81, 121 S. Ct. 513, 517, 148 L. Ed. 2d 373 (2000)).

3

In the case at bar, defendant does not challenge the validity of the agreement.  Nor does he dispute that the claims he asserts are within the scope of the agreement, which provides that

> any legal controversy, dispute, disagreement or claim of any kind (collectively "Dispute") now existing or occurring in the future between the parties arising out of or in any way relating to this Agreement, the Admission Agreement or the Resident's stay at the Facility shall be resolved through an ADR process (as defined herein), including, but not limited to, all Disputes based on breach of contract, negligence, medical malpractice, tort, breach of statutory duty, resident's rights, any departures from accepted standards of care, and all disputes regarding the interpretation of this Agreement, allegations of fraud in the inducement or requests for rescission of this Agreement.  This includes any Dispute involving a claim against the Facility, its employees, agents, officers, directors, any parent subsidiary or affiliate of the Facility or any Dispute involving a claim against the Resident, the Resident's Legal Representative or Responsible Party or family member.

Defendant contends, though, that the agreement is unenforceable because (1) it fails to provide a forum or an arbitrator and (2) is substantively unconscionable.  Both arguments are addressed below.

The subject agreement states:

> [T]he Parties agree to participate in formal Mediation and Arbitration to be conducted by ADR Associates, LLC through its Dispute Resolution Process for Consumer Healthcare Disputes ("ADR Associates Rules"), which are incorporated herein be reference, and as more fully set forth below.  If ADR Associates, LLC is unable or unwilling to conduct the ADR process at the time of the dispute, the parties shall mutually agree upon an alternative organization that is regularly engaged in providing ADR services to conduct the Mediation and Arbitration.  If the Parties cannot agree on a

4

mediator/arbitrator, each party shall select one
mediator/arbitrator and they together shall choose a
third mediator/arbitrator who shall conduct the ADR
Process.

Defendant states that whereas the parties agreed that the

arbitration would be conducted by ADR Associates, LLC, that entity

in fact had ceased to exist well before the arbitration agreement

was signed.  He submits that under the circumstances, the

agreement is unenforceable as there is no provision for an

arbitral forum.  In support of his position, defendant relies on

Magnolia Healthcare, Inc. v. Barnes, 994 So. 2d 159 (Miss. 2008),

and Covenant Health & Rehabilitation v. Moulds, 14 So. 3d 695

(Miss. 2009).  However, both cases are clearly distinguishable.[1]

_____

[1]     Plaintiff contends that in the event state law would
hold an agreement unenforceable based on the parties' failure to
select or provide a method for selecting an arbitrator or
arbitrators or based on a lapse in the naming of an arbitrator or
arbitrators, federal law, and in particular Section 5 of the FAA,
would provide the operative substantive law regarding an
arbitration forum.  See AT&T Mobility LLC V. Concepcion, 131 S.
Ct. 1740, 1753, 179 L. Ed. 2d 742 (2011) (holding that FAA
preempted state law where state law contradicted provisions of the
FAA).  Section 5 states:
    If in the agreement provision be made for a method of
    naming or appointing an arbitrator or arbitrators or an
    umpire, such method shall be followed; but if no method
    be provided therein, or if a method be provided and any
    party thereto shall fail to avail himself of such
    method, or if for any other reason there shall be a
    lapse in the naming of an arbitrator or arbitrators or
    umpire, or in filling a vacancy, then upon the
    application of either party to the controversy the court
    shall designate and appoint an arbitrator or arbitrators
    or umpire, as the case may require, who shall act under
    the said agreement with the same force and effect as if
    he or they had been specifically named therein; and
    unless otherwise provided in the agreement the

The arbitration agreement in <u>Moulds</u> mandated that any covered dispute would be "resolved by binding arbitration administered by the American Arbitration Association (AAA) and its rules and procedures."  14 So. 3d at 706.  Subsequent to execution of the agreement, the AAA announced that it would no longer accept administration of cases involving individual patients without a post-dispute agreement to arbitration.  <u>Id</u>.  Since the forum chosen by the parties had refused to accept the dispute and was thus unavailable, the Mississippi Supreme Court refused to enforce the agreement, reasoning that "[a] court should not be used to reform a contract to select a forum not anticipated by either of the parties."  <u>Id</u>. at 707.  That is, the court "decline[d] to order the contract rewritten and decline[d] to order the lower court to pick a forum."  <u>Id.</u> at 709.

In <u>Sherrer v. Covenant Health & Rehab of Picayune, LLC</u>, Civil Action No. 1:11CV296 LG-RHW, 2012 WL 1067910 (S.D. Miss. Mar. 29, 2012), which involved an identical arbitration provision to the one at issue in this case, Judge Louis Guirola considered and rejected the same argument as made by defendant herein.  In <u>Sherrer</u>, the plaintiff argued, as does this defendant, that the arbitration agreement was unenforceable since it was undisputed that ADR Associates, LLC, the first designated mediator/

---

arbitration shall be by a single arbitrator.
9 U.S.C. § 5.  The court need not consider this argument since state law in this case is not inconsistent with federal law.

6

arbitrator, was not in existence at the time the arbitration

agreement was executed and the referenced rules were not

available.  Id. at *5.  The court acknowledged Moulds, but found

there were "significant differences in the language of the various

forum selection clauses that lead to a different outcome in this

case."  Id. at *6.  The court aptly observed that

> [t]here [was] no indication in [the] record that ADR
> Associates had a rule similar to the AAA requiring a
> post-dispute arbitration agreement.  Further, ... the
> forum selection clause in this case anticipated that the
> first-designated ADR organization might not be available
> and prescribed a method for selecting an alternate
> organization.  In that event, a reasonable reading of
> the clause is that the alternate organization would
> conduct the arbitration pursuant to its own rules.

Id.  In the court's opinion, Judge Guirola's reasoning and

conclusion in Sherrer is eminently correct.  Yet defendant, while

acknowledging Sherrer, maintains that the decision was mistaken as

the court failed to take into consideration the validity of the

subject arbitration clause in the event a party does not agree

upon arbitration under any circumstances.  He asserts that since

he does not agree to arbitration to be conducted by any

organization or person whatsoever and since the agreement provides

no forum in the event the parties do not agree, then the court

would be forced to decide the forum, arbitrator and rules to

apply, in contravention of the Supreme Court's holding in Moulds.

His position is without merit, for the agreement explicitly

contemplates that the parties might not agree and prescribes an

agreed method for selection in that event, to wit: "If the Parties cannot agree on a mediator/arbitrator, each party shall select one mediator/arbitrator and they together shall choose a third mediator/arbitrator who shall conduct the ADR Process."

Barnes is similarly distinguishable. The agreement in Barnes provided for resolution of any covered dispute through binding arbitration in accordance with the alternative dispute resolution rules of the American Health Lawyers Association (AHLA), though it did not require arbitration by the AHLA. 994 So. 2d at 161. The AHLA rules required a post-dispute agreement to arbitrate and there was no such agreement. Id. at 162. On these facts, a plurality of the Mississippi Supreme Court concluded that "there was no valid agreement to arbitrate." Id. at 162. Unlike Barnes, there is nothing in the arbitration agreement in this case requiring a post-dispute agreement to arbitration. The parties agreed to arbitration; and they agreed, if not on a forum for arbitration, on a process for selecting a forum. Accordingly, defendant's objection on this basis is without merit.

As an additional basis to deny Oasis's request for enforcement of the parties' agreement, defendant argues that the agreement is substantively unconscionable. "[A]pplicable contract defenses available under state contract law such as fraud, duress, and unconscionability may be asserted to invalidate the arbitration agreement without offending the Federal Arbitration

Act." East Ford, Inc. v. Taylor, 826 So. 2d 709, 713 (Miss. 2002)
(citing Doctor's Assocs. v. Casarotto, 517 U.S. 681, 686, 116 S.
Ct. 1652, 134 L. Ed. 2d 902 (1996)). "Substantive
unconscionability is proven by oppressive contract terms such that
'there is a one-sided agreement whereby one party is deprived of
all the benefits of the agreement or left without a remedy for
another party's nonperformance or breach....'" Moulds, 14 So. 3d
at 699 (quoting Bank of Indiana, Nat'l Ass'n. v. Holyfield, 476 F.
Supp. 104, 109 (S.D. Miss. 1979)).

In his motion, defendant identifies three provisions or
aspects of the agreement which he contends render it substantively
unconscionable. First, he challenges provisions of the agreement
which he contends have the effect of permitting Oasis to litigate
its likely claims while requiring patients and their families to
arbitrate all disputes. He further contends that the agreement
impermissibly shortens the statute of limitations. Finally, he
claims the agreement is unconscionable because it requires the
parties to share equally the costs of arbitration. Defendant
submits that pursuant to the Mississippi Supreme Court's decision
in Moulds, supra, these unconscionable terms may not merely be
severed and the remainder of the agreement enforced, but rather,
the presence of these unconscionable provisions (or any one or
more of them) invalidates the whole agreement.

9

Defendant's reading of Moulds is flawed.  The court in Moulds did note that "[t]he presence of an unlawful provision in an arbitration agreement may serve to taint the entire arbitration agreement rendering the agreement completely unenforceable."  Id. at 704 (citing Lacey Healthcare & Ret. Corp. of Am., 918 So. 2d 333 (Fla. Dist. Ct. App. 2005).  However, it did not hold, as plaintiff seems to suggest, that the presence of *any* unlawful provision in an arbitration agreement will render it unenforceable.

The agreement at issue in Moulds was not a separate arbitration agreement as here but rather an admission agreement that contained an arbitration provision.  14 So. 3d at 700.  As noted in Moulds, the Mississippi Supreme Court and Mississippi Court of Appeals in a series of cases had sustained various challenges to numerous non-forum provisions of that agreement and had struck a significant number of provisions of the agreement, finding they were one-sided, oppressive and unconscionable or that they violated a state statute.  Id. at 701-03.  Over time, the courts had struck clauses limiting the amount of damages awardable in a dispute between the nursing home and resident (clause E7); waiving punitive damages (E8); waiving liability for criminal acts of individuals (C-8); requiring the patient and responsible party to hold the facility harmless when an injury could have been avoided with private-duty care and requiring forfeiture by the

resident of all claims except those for willful acts (C5);

mandating a "grievance resolution process" except as to matters of

payment (E5) and allowing the care facility to bring suit in court

on issues of payment but prohibiting the resident from bringing

suit in court on any grounds (E6); requiring mediation, with the

parties to share costs equally (E6); awarding all costs to the

other party upon a party's failure to comply with the arbitration

procedures (E12); prohibiting legal action by a resident "more

than one year following the happening of the event giving rise to

[the] complaint, claim, or grievance" (E16); and setting a

$3.00/page charge for copies requested by parties (E14).  Id.

(citing <u>Covenant Health Rehab. of Picayune, L.P. v. Brown</u>, 949 So.

2d 732 (Miss. 2007); <u>Vicksburg Partners, L.P. v. Stephens</u>, 911 So.

2d 507 (Miss. 2005); <u>Trinity Mission of Clinton, LLC v. Barber</u>,

988 So. 2d 910, 923 (Miss. Ct. App. 2007); <u>Covenant Health &</u>

<u>Rehab. of Picayune, LP v. Estate of Lambert</u>, 984 So. 2d 283, 287

(Miss. Ct. App. 2006)).  In view of the "multitude" or "plethora"

of provisions that had been found unconscionable and/or violative

of statute, the court held that the contract was unconscionable as

a whole, reasoning that to hold otherwise would "'result[] in this

Court rewriting a contract which favors a goal of the nullifying

party; an undeserved reward for unconscionable conduct.'" <u>Id</u>. at

706 (quoting <u>Brown</u>, 949 So. 2d at 748 (5-4 decision) (Randolph,

J., dissenting)).  The court did not purport to abandon the

11

principle to which it had previously adhered, that "[i]f the court
as a matter of law finds the contract to have been unconscionable
... [it] may refuse to enforce the contract, or it may enforce the
remainder of the contract without the unconscionable clause, or it
may so limit the application of any unconscionable clause as to
avoid any unconscionable result." Miss. Code Ann. § 75-2-302
(Uniform Commercial Code statute recognized in Moulds, 14 So. 3d
at 699, as having been applied not only to the sale of goods but
to other contracts as well).  The inquiry here is thus whether the
provisions challenged by defendant are unconscionable or otherwise
unenforceable, and if so, whether the offensive provision(s) can
be severed without the court's effectively rewriting the parties'
contract.

     Citing Moulds, defendant contends that the provision of the
subject agreement requiring that the parties share equally the
costs of arbitration is unconscionable, but he offers no
substantive factual or legal support for this position.  Contrary
to defendant's insinuation, the court in Moulds did not hold that
it is unconscionable to require that the costs of arbitration be
shared equally by the parties.  It did not address that issue.
There is no question but that an arbitration agreement may be
substantively unconscionable if the fees and costs to arbitrate
are so excessive as to "preclude a litigant ... from effectively
vindicating her federal statutory rights in the arbitral forum."

12

<u>Green Tree Fin. Corp. v. Randolph</u>, 531 U.S. 79, 90, 121 S. Ct.
513, 148 L. Ed. 2d 373 (2000).  However, the mere "risk that [a
litigant] will be saddled with prohibitive costs is too
speculative to justify the invalidation of an arbitration
agreement."  <u>Randolph</u>, 531 U.S. at 91, 121 S. Ct. 513).  Thus,
"[t]he party seeking to invalidate an arbitration agreement on
[the] grounds [of excessive fees or costs] has the burden of
proving that arbitration would be prohibitively expensive."  <u>Id</u>.
<u>See also</u> <u>Crawford Professional Drugs, Inc. v. CVS Caremark Corp.</u>,
748 F.3d 249, 267 (5th Cir. 2014) (quoting <u>Randolph</u>).  Defendant
herein has made no effort to satisfy this burden.

Defendant next challenges a provision which states:

> All Disputes based in whole or in part on the same
> incident, transaction, or related course of care and
> services provided by the Facility to the Resident,
> regardless of whether it is the Facility or the Resident
> initiating the Dispute, shall be resolved in one ADR
> proceeding.  A Dispute shall be waived and forever
> barred if it arose prior to the date upon which notice
> of ADR process is received by the Facility or by the
> Resident, and is not presented in the ADR process.

Although defendant declares that the last sentence impermissibly
shortens the statute of limitations in violation of state law, <u>see</u>
Miss. Code Ann. § 15-1-5 (providing that any changes in a statute
of limitations "made by any contract stipulation whatsoever shall

be absolutely null and void"), he has offered no analysis or

authority in support of his position.[2]

The principal focus of defendant's unconscionability argument

is his contention that the subject agreement allows for litigation

of claims by Oasis and yet requires that patients and their family

members must arbitrate their disputes.  He refers, in particular,

to the following provision:

> Disputes Not Subject to ADR.  Notwithstanding anything
> to the contrary, either Party may, at its discretion,
> opt out of the requirements of this Agreement and
> proceed in a court of law for the following matters:
>
> > a.  The refund of money to the Resident, to the
> > Resident's Legal Representative of the Resident's estate.
> >
> > b.  Payment of services rendered to the Resident by the
> > Facility.

Defendant contends that this provision is unconscionable as it

"allows the nursing home to go to court to litigate a collection

dispute" but requires a patient or her representative to litigate

their claims.[3]  In its own motion, and in response to defendant's

motion, Oasis points out that under this provision, *either* party

may require the care facility to go to court to litigate a

_____

[2]    The court notes too, as does plaintiff, that defendant
has not contended or sought to demonstrate that this provision has
any potential for harm to him under the facts of this case.

[3]    Defendant also contends that this provision renders the
agreement ambiguous, as it contradicts the prior provision, which
mandates arbitration of the parties' disputes.  There is no
ambiguity, as this provision excepting certain disputes from
arbitration by its terms applies "[n]otwithstanding anything to
the contrary."

14

collection dispute or to litigate an issue regarding the refund of money to a resident, the latter of which could include not only monies paid by the resident to the facility but also claims of loss or theft of income, personal property or other minor contractual disputes.  Defendant has not responded to the argument and, the in court's opinion, has failed to demonstrate that the subject provision is unconscionable.[4]

Having considered and rejected defendant's defenses to arbitration, the court finds the parties have a valid agreement to arbitrate which covers the claims sought to be asserted by defendant against Oasis, and the court further finds that there are no external legal constraints that foreclose arbitration. Accordingly, is ordered that defendant's motion to dismiss or for summary judgment is denied and that plaintiff's motion for summary judgment is granted.  It is therefore ordered that the claims sought to be brought against Oasis shall be pursued, if at all, in conformity with the arbitration agreement.

SO ORDERED this 6th day of August, 2014.


                                     /s/ Tom S. Lee_____
                                     UNITED STATES DISTRICT JUDGE

---

[4]     In a related vein, defendant has argued that a provision in the agreement, requiring that a party proceed through a phased grievance resolution process, is unconscionable for lack of mutuality as it unfairly burdens patients and their family members since only they are required to arbitrate claims.  This claim is rejected for the reasons set forth in the text.